The final case this morning is 2012-12-61, In Re Owens. Thank you, Your Honor. May it please the Court, my name is Perry Sedman. I represent Timothy Owens, his four co-designers, and the real party in interest, Procter & Gamble of Cincinnati. This case is about broken lines. So maybe for the first time this Court will need to focus on what is not claimed rather than on what is claimed. I would like to make three points. The first is that appellants do not claim a trapezoid feature. The critical issue in this case is proper claim construction. It depends what you mean by a trapezoid on would not infringe. It is so hard to talk about a design in words, but it would depend where these lines are drawn. If it would not infringe, then why are we bothering with adding the dash dot line? The assumption is that it would infringe. If that line on the bottle were a break line on the bottle, and it was below the broken line in our drawing, it would infringe. And so doesn't that mean that the so-called unclaimed boundary is effectively a claimed boundary? No, Your Honor, it is not a claimed boundary. Let's suppose that our claim included a solid line instead of a broken line. In order to infringe that claim, an accused bottle would have to have a solid line, a line across it, a break in the bottle that corresponded to the position of that solid line. And because we have a broken line there, it does not matter whether an accused design has anything at that position or below that position. So why are we here? I mean, presumably you're trying to backdate this because you need to do this in order to be charging certain of these bottles as infringing, right? It comes up all the time, exactly right. So there's something that wouldn't be covered in the first application, in the first patent, 709 design, that you're trying to capture here. That's correct. Because because what the knockoff artists do is they copy only a portion of your bottle and they change the other portion so that the original claim, they have a very colorable argument that it's not infringed. So this is very common practice in utility practice. If the disclosure supports a claim to the portion of the bottle that they have in fact copied, design patentees need the a continuation application claiming the portion of the bottle that the infringer knocked off. So what kind of a rule would you devise? Because the patent office will tell us why they think under what the... Well, N. Ray Daniels offers a framework for this. Daniels is really a different kind of a case. Well, the facts are different. But the underlying principle of Daniels is that if the new claim design is reasonably identifiable in the original application, then there is support for the new design. Now the words reasonably identifiable you will not find in Daniels. But I believe that provides a proper framework for analyzing whether a new claim design is sufficiently disclosed in the original application. You know, we could ask the that much from yours. The problem is I think there's a laudable search for clarity, greater clarity here. And it seems to me, I hate to be sort of sarcastic, but that the rules you're coming up with to ensure clarity have the same wishy-washy waffling words that don't make it any clearer than what we've got now. So can you kind of address that? Well, yeah, I think the patent office is proposing a rule that your claim design has to be exactly delineated in the parent application. Well, we can ask them. I didn't hear that as that position. But go ahead. And the patent office itself in its own regulations and presentations has presented situations which allow the addition of a broken line boundary without calling it new matter in certain circumstances. Circumstances which are really not distinguishable from the present case. But that's the problem. Obviously they are because I think the patent office has a pretty clear rule and yet you're arguing that it's not. So obviously the other cases are distinguishable. Tell me what case is not distinguishable from this one. Well, there's the case that's illustrated in the reply proof, your honor, on page 10. The patent office says that the amended design is fully supported in the original disclosure. Because every one of those dashed dotted lines in the amended design, every single one of them is present in the original design. Look, where the dashed dotted line breaks it off across the middle, that was a separate planar surface delineated clearly in the original line. But why should this applicant presented in the patent office example have an advantage over the present case just because they have wavy lines in their bottle? It's not wavy lines. It's because they provided written description support for something different occurring across the mid section there. You did not. That's the PTO's argument as I understand it. Well, the PTO's there is no disclosure in the parent for a trapezoid feature and we are not claiming a trapezoid feature. Their whole argument is premised on an erroneous claim construction. They treat our broken line boundary as if it were solid and they draw this orange trapezoid right in the middle of their brief and say this orange trapezoid is not in the parent. And I agree that there's no trapezoid delineated in the parent, but that's not what we're claiming. We're claiming the front. Because if somebody came along and had that trapezoid and a solid line and then the bottle went crazy on the way down in any which way, doesn't quite matter, you'd say that infringes your design. It would. So you are claiming the trapezoid because you would be asserting this patent against somebody with an infringing device that had the trapezoid. It wouldn't matter what they had below that broken line. It could be RG3's knee. It wouldn't matter because what's below that broken line is not part of our claim. So what would be infringing if you got your child that wouldn't be infringing with just the original? Well there's there's a good example also of that in in the reply brief, Your Honor, on page 7. Figure A is a hypothetical accused design with this M feature on the front. It would definitely infringe figure B, which is our claim, because it doesn't matter what is below our broken line boundary. The Patent Office's claim construction in figure C, it would not be infringed by this would not contain a trapezoid feature as would have to be construed in the claim in figure C. There's a difference between that line being broken and solid. There's a huge difference. If it's a solid line, that line has to appear either in the prior art to be rejectable or in the accused design to be infringed. If you're just claiming the front surface down to a particular point, then that's all that has to be in the accused design or in the prior art. The problem is that point, that point that you're claiming it to isn't called out in the parent patent. This isn't a case about whether you can patent the 172 design. Clearly, theoretically you can. The question is, do you provide written description support with the top of the bottle that only goes so far? The entire bottle provides written description support for just about any reasonably identifiable portion thereof. We have no way to and we have written description support therefore for any reasonably identifiable portion that we want to claim later. We couldn't claim... Where's the reasonably identifiable portion? There is no portion. If you've got a flat planar surface with absolutely nothing on it, you can't just put a dashed dotted line across the middle and say, see the top half is a reasonably identifiable portion. It's not. There's nothing in the prior art or in the prior design, the 709 design, that shows that that portion can be separated out. It's the portion itself that's disclosed. It's not the fact that it can be separated. The portion is disclosed. It's part of the entire surface of the bottle. Why don't we hear from the government and we'll save you a little time. Well, let me start off, may it please the court, your honors, let me start off. This is not a dispute about claim construction. This is a factual dispute. We agree on claim construction that the boundary, the dashed line, is an unclaimed line. But even appellants just said the subject matter above that line is the claimed surface. That's what forms the trapezoidal shape that we've drawn in our brief. So tell us what the rule is. What I got from your brief and your citation of the MPP is you can't introduce a new boundary line in an unnatural spot where no artisan would otherwise recognize a boundary. Is that the rule? What the rule is, is the written description rule. If you want to claim priority to a parent application, there has to be an adequate description in that parent application to show this new feature. And in this case, because it's a design patent rather than a utility patent, we have to compare the drawings. And if we look at the original drawing from the parent patent, the 5-1-5 patent, as Judge Moore pointed out a number of times, there is no boundary anywhere on the face of the design. And now, in the child application... Am I wrong? Don't those, in fact, those sort of up and down lines indicate that? What do they indicate? That's just to show there's a facial surface, as if a flat facial surface, but those up and down lines just help show that. But is it meant to be flat, meaning does it have to be a single plane? Is that how it's supposed to be? I mean, I think in this case, this design, the front's actually slightly curved, but it's generally a planar surface is what it is. And those... No, but not is it in terms of this bottle, but what do those lines mean? Those are just to help you, for example, in any of the pictures of design patents where you see those lines, it's just to help you see that there's actually a face there, a surface there, because it's a picture, and you can't actually have it there in three dimensions. It's a two-dimensional picture trying to display a three-dimensional shape. That's the reason why those lines are there. But the line that we're talking about in this case, the dispute here, is the dotted line... I'm looking at the text. Step one is you look at the original design, and there's no boundary. And if we look at the original design, there is no dashed line going across the middle. And if you look at the later amended design, which is on page five of our brief, if you look at page four of our brief, you'll see the original design, which is what they want priority to. If you look at the page five of our brief, you'll see the amended design. The amended design has this dotted line going through the middle, which then defines a boundary below and above. We all understand below, it's unclaimed, and above, it is claimed, as the appellant pointed out. That forms the trapezoidal shape that the examiner identified. The examiner then said, well, wait a minute. You've put in a boundary here. We understand that the line is unclaimed, but the stuff above the line is claimed. That boundary now, was that contemplated in the original disclosure? Is there evidence in the original disclosure, the original description, that you had possession of that, the inventor? And the examiner looked at the drawing and made a fact finding and said, no. When I look at the original drawing on page four, reflected on page four of our brief, the examiner's finding said, I don't see anywhere on that original design, anything on there to indicate that there would be a boundary somewhere in the middle. It's arbitrary. And that's the basis for the examiner's finding. So is that the rule? There was nothing, or if there's nothing to indicate that there would have been a boundary, is that the standard? Right. Is there anything to indicate there would have been a, there was a boundary? Right. And let me, let's give you an example to help clarify. Mr. Sedman pointed out in his reply brief at page ten, an example. And in page ten, if you see the upper example, you'll see this bottle. Yeah, that example I get, could you speak, sorry, your time doesn't run out. The example I'm actually having a problem with, I understand the, I can reconcile the in re Daniels, and I cannot reconcile this example. Right. It's the humidifier that gets to me. Right. And in our view, your honor, what happened in the humidifier would be, arguably, would not be consistent with the real policy, or with what we're talking about here. Oh, well that's helpful, because I can't see the difference between. Right. But remember, that humidifier is really not part of this record. It's just something that was put in the amicus brief. But it's not part of the record. But nevertheless. Yeah, but in fairness to parties, they try to rely on that to learn what the rules of the game are, and so it's kind of hard to. And just because maybe a patent may have been issued in some other case, where there may have been a violation of the policy that's being asserted here, it doesn't bind us in this case. So looking at the humidifier. Right. Under the rule that we're, you're trying to articulate to us today. Right. That would not satisfy the rule. No, nor. Nothing in the original. No. That demonstrates that there's a reasonable. No, because I think if you look at the humidifier example, what you'll see is they did indeed add lines that did not arguably appear anywhere, or have a reason to appear anywhere in the original disclosure. And. Now I'll let you get back to the discussion. But to get back to where I was, this is a really good example to illustrate the rule that we're applying. This upper example on page 10 of the reply brief does indeed show where the initial description had the whole bottle. The upper portion design was a cone shape. The bottom portion was this curved shape. So there's a clear indication in the original disclosure where there's a break. And there's a straight line at that spot. So now in the later disclosure, this particular applicant decided to make an amendment. They decided to say, I don't want to claim the bottom portion. I just want to claim the upper portion design, the conical shape. So then they were permitted to put in a dashed line there to indicate an unclaimed boundary where below it would be unclaimed. And yes indeed, this particular design claim would capture certain subject matter that this earlier design claim would want. So the PTO is not preventative. So this is all unclaimed? Correct. So if somebody comes up with a bottle that has a different shape than the original design below, do they get to claim infringement? Arguably, if the upper design matches the design on that other bottle, arguably the second amended design would then be able to capture that other. In fact, that's exactly what's happening in this case. They're attempting to amend the original claim design by unclaiming a bottom portion of the bottle and then they can actually capture other variations that have the same upper portion. The problem here is not about that. The PTO is not disputing that an applicant has every right to amend their claim and remove certain features as long as there's adequate description in the original disclosure. The problem here is they've added something. What did they add? They added a boundary. And by putting a boundary in an arbitrary location that had no support in the original disclosure in the PTO's view violates the written description requirement and accordingly there's no 120 priority to that earlier filing. That's the problem here. Can I just add a few, maybe a silly but, but if you're a manufacturer out there and you want to look at what you're allowed to do and what you're not allowed to do. So you start with an original design in year one and you say, okay, this is what he's claimed, but I'm okay if I do a thing with the bottle going down and then a circular shape or an oval shape below, but you're telling me that you're, a manufacturer cannot say I'm okay because he can come in years down the road and say no I'm going to claim that. Well keep in mind what would happen is although someone can do this, can do what happened here, keep in mind if this amended later design is, let's not call it broader, let's call it a different scope because broader and narrower is a difficult term in the design case because in the design situation we're comparing the two designs, the accused design to the patent design to see whether they infringe. But keep in mind what would happen is even though this applicant is permitted to do this, make this amendment, that doesn't mean the PTO doesn't go back and research the prior art and potentially reject this because it might be unpatentable in view of something else. So the point is yes they can make this amendment and yes they could potentially capture other devices or other designs with this amended design but it would have to first be cleared for patentability. So yes they're allowed to do it and you know they're allowed to do that in a utility patent as well. You can file an application, you can have a utility claim and that claim might be somewhat narrower or have more features in it and then later you can file a continuation while that's co-pending and you can put other claims in and those other claims might not have those same features and they might capture something else as long as the original description and the original disclosure adequately support that to the point where the ordinary artisan would understand that the inventor had possession and that's the problem here. The problem here is a fact dispute. It's not a claim construction dispute. It's not about whether or not the applicant can do what they want to do. What this is really about is a question of fact and whether or not this added horizontal dashed line is something that didn't exist in the original description and if it didn't, that's the examiner's finding, a fact finding. We believe there's substantial evidence in the record to support that and as a result, we believe the agency gets a deference on that finding and accordingly, we respectfully ask the court to affirm our decision. And I think I've covered everything unless there's any further questions, Your Honor. Thank you. The Patent Office continues to talk about an added boundary as if it were claimed. We have a broken line that is not part of the claim and therefore, it doesn't have to be physically present or shown in the parent application. The confusion I have in this regard and I think Mr. Lamarck seemed to alleviate some of that confusion is when you talk about you're claiming, when you have the dotted line, that means that you're claiming certain of the stuff and you're not claiming certain of the stuff. So it's not all one or all the other. It's the division between what's dividing up what's claimed and what's not claimed. Is that accurate? Yes, it is, Your Honor. It is a boundary which is itself unclaimed. Right. Right. But it does line out or... It carves out a certain portion of the original design that the applicant is allowed to come in and claim at a later date if it is patentable over the prior art. This is really no different than in the utility patent where the original claim is A plus B plus C plus D. There's no line drawn in the utility patent that says my invention is really A plus B plus C. There's no line drawn between C and D yet we know that in a continuation, the inventor is entitled to file a claim to A plus B plus C. Just because there was no line drawn in the parent and I'm using that figuratively does not mean that the inventor is not later allowed to say that's my invention A plus B plus C. He's allowed to change or redefine that which he regards as invention. The same is true on the design side. We invented and designed this... I hate to tell you this but you're not right on utility patent law. You can't claim something and then take elements out of it and say let's take a chemical composition. The chemical composition is A plus B plus C plus D. You don't get to then say oh no my composition is A plus B plus C. I agree your honor I was not referring to chemical cases and it's an area I don't practice. In mechanical cases it's not true because maybe the bike doesn't work without the chain. If you don't have a working... You can't just say oh let's leave the chain on and claim a working bike without a chain. You can't do it there either. It actually doesn't work in any cases that I can actually think of. Well... I'm not sure your analogy holds. Maybe I'll just let you move on. You got a limited amount of time. There are some cases cited in our brief which support that principle. The principle of being able to redefine that which you regard as your invention. I would say that the patent office argues that the line, the broken line boundary need a... in the continuation. And if there needs to be a reason for it to appear that is just an unworkable standard. It's unworkable because the reason for it to appear is really defined by what's going on in the marketplace. If someone copies a portion of that bottle and that bottle itself is fully disclosed, every surface, every pane in the parent, then a reasonable identifiable portion of that bottle should be allowed to be claimed in a continuing application. Are there any further questions? No. I would thank both parties. The case is submitted. That concludes the proceedings for this morning. All rise. Your report is adjourned until tomorrow afternoon.